CHARLES S. SHEPARD *vs.* VOLNEY J. JACOBS & another.

Middlesex. November 8, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Agency. Master and Servant. Automobile.*

Where the owner of an automobile lets it with a licensed chauffeur in charge of it, under an agreement by which he is to receive $50 for the use of the car with the driver for two days, he is liable for an injury to a third person caused by the negligence of the driver in operating the car during the period of hiring and when the driver is obeying the orders of the hirer as to when and where he shall drive.

TORT for injuries to the plaintiff's automobile resulting from a collision with the defendants' automobile in Lowell, on the morning of September 7, 1908. Writ dated September 8, 1908.

In the Superior Court the case was tried before *Gaskill*, J., without a jury. It appeared that on the day of the accident there were automobile races over the course in Lowell which were attended by a large concourse of people, and that the plaintiff, accompanied by his wife, a lady guest and a servant, was driving his automobile from his house in Lowell up Varnum Avenue toward the race-course where he had secured a stall for his automobile near the grand stand, and that when he was nearing the Pawtucket Boulevard the defendants' automobile, driven by one Lodge, a licensed chauffeur, without any passengers, came down Varnum Avenue and ran into the plaintiff's automobile near the intersection of those public ways.

At the close of the evidence, the defendants asked the judge to make the following rulings:

"1. On all the evidence, plaintiff is not entitled to recover in this action.

"2. At the time of the alleged accident, the witnesss Lodge was doing the work of the Fiat Automobile Company under the control of said Fiat Automobile Company or its officers and was not then the agent or servant of the defendants. Wherefore the plaintiff is not entitled to recover in this action.

" 3. That the witness Lodge was, at the time of the accident, the servant of the Fiat Automobile Company.    Wherefore the plaintiff cannot recover in this action."

The judge refused to give any of these rulings, and found for the plaintiff in the sum of $400.    The defendants alleged exceptions.

It was admitted that there was sufficient evidence that the plaintiff was in the exercise of due care and that the driver of the defendants' automobile was negligent, and it was agreed that the only question raised by the exceptions was whether the defendants were liable for the negligence of the driver of their automobile.    The facts shown by the evidence upon this issue are stated in the opinion.

*F. J. Daggett,* for the defendants.

*A. P. Sawyer,* for the plaintiff.

KNOWLTON, C. J.    This is an action for damages resulting from a collision between an automobile of the plaintiff and one owned by the defendants.    The defendants let their automobile, with one Lodge, a licensed chauffeur, in charge of it, to the Fiat Automobile Company, to be used by one Hollander, a representative of that company, in and around Lowell at the time of the automobile races there in September, 1908.    The defendants were to receive $50 for the use of the car, with the driver, for two days. Hollander gave orders to the driver as to when and where the car should be driven, as one would order the driver of a common carriage which he had hired by the day or the hour.    The question is whether, upon the evidence, the judge, before whom the case was tried without a jury, was bound to find, as requested by the defendants, that the Fiat Automobile Company was liable for the negligence of Lodge in the management of the car at the time of the accident, and that Lodge was not then the servant of the defendants, for whose negligence they could be holden.

The case turns upon the law of master and servant in its application to the facts.    It is well settled that the general master of a servant may lend him, with his consent, to another person for service in the business of the other, and that, while he is engaged in the business of the other person and in all respects subject to his direction and control, he becomes the servant of the new master, and this master becomes liable for his negli-

gence. In determining whether, in a particular act, he is the servant of his original master or of the person to whom he has been furnished, the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result. Is this person the proprietor of the business in which the act is done? By this is meant not merely the general business which the act is intended to promote, but the particular business which calls for the act, in the smallest subdivision that can be made of the business in reference to control and proprietorship. *Coughlan* v. *Cambridge*, 166 Mass. 268. *Delory* v. *Blodgett*, 185 Mass. 126. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12. *Rourke* v. *White Moss Colliery Co.* 2 C. P. D. 205. *Donovan* v. *Laing, Wharton, & Down Construction Syndicate*, [1893] 1 Q. B. 629.

In the application of these principles to the hiring of a carriage with horses and a driver, to be used for the conveyance of the hirer from place to place, it has been held almost universally that in the care and management of the horse and vehicle, the driver does not become the servant of the hirer, but remains subject to the control of his general employer, and that therefore the hirer is not liable for his negligence in driving. *Driscoll* v. *Towle*, 181 Mass. 416. *Huff* v. *Ford*, 126 Mass. 24. *Reagan* v. *Casey*, 160 Mass. 374. *Quarman* v. *Burnett*, 6 M. & W. 499. *Jones* v. *Corporation of Liverpool*, 14 Q. B. D. 890. *Lewis* v. *Long Island Railroad*, 162 N. Y. 52. *Little* v. *Hackett*, 116 U. S. 366. *Standard Oil Co.* v. *Anderson*, 212 U. S. 215. *Joslin* v. *Grand Rapids Ice Co.* 50 Mich. 516. *Stewart* v. *California Improvement Co.* 131 Cal. 125, 129. *Frerker* v. *Nicholson*, 41 Col. 12.

In *Donovan* v. *Laing*, [1893] 1 Q. B. 629, Lord Justice Bowen said: " There are two ways in which a contractor may employ his men and his machines. He may contract to do the work, and, the end being prescribed, the means of arriving at it may be left to him. Or he may contract in a different manner, and, not doing the work himself, may place his servants and plant under the control of another — that is, he may loan them —

and in that way he does not retain control over the work. . . .
If a man lets out a carriage on hire to another, he in no sense
places the coachman under the control of the hirer, except that
the latter may indicate the destination to which he wishes to be
driven.   The coachman does not become the servant of the per-
son he is driving ; and if the coachman acts wrongly, the hirer
can only complain to the owner of the carriage."   The rights
and liabilities of the parties depend upon their contract, express
or implied.   The subject was considered in *Delory* v. *Blodgett*,
185 Mass. 126, 129, and reference was made to the implication in
such cases, that, " as to the particulars of the management of the
horses, he [the driver] is the servant of his general employer, in
whose interest and as whose representative he will manage and
direct, within reasonable limits, such matters as pertain to the
health and safety of the horses and the safety of the vehicle.   In
these particulars, for the preservation of his property, it will be
presumed that the owner of the team retains in his driver a
right of control."   See also *Huff* v. *Ford*, 126 Mass. 24; *Reagan*
v. *Casey*, 160 Mass. 374.   A similar view is indicated in *Jones* v.
*Scullard*, [1898] 2 Q. B. 565, 572, 574.   The health and safety
of the horses, and the protection of the whole team by careful
management, are of so much importance to the owner that, in
the absence of an express contract, he will not be presumed
to have given up their management to the hirer when he has
sent his own servant for the special purpose of retaining this
management.

   If the defendants had furnished horses, a carriage and a driver
under a similar contract, instead of an automobile and a driver,
there would be no doubt of their liability for the negligence of
the driver in the management of the team.   The question is
whether the same result should be reached upon the facts of this
case.   The analogy between the two kinds of contract is very
close.   The management of an automobile properly can be trusted
only to a skilled expert.   The law will not permit such a vehicle
to be run in the streets except by a licensed chauffeur of approved
competency.   The danger of great loss of property by the owner,
as well as of injury to the chauffeur, his servant, is such as to
make it of the highest importance that care should be exercised
in his interest, and that the control and management of the ma-

chine should not be given up to the hirer.   The reasons for applying this rule in a case like the present are fully as strong as when a carriage and horses are let with a driver.

The decisions are conflicting in cases where there has been a general letting of railroad trains and large machines of different kinds, with a man or men to work with them.   It has often been held in such cases, where the hirer was to have the general control and use of them, that the men in charge became his servants, for whose negligence he alone was liable as master.   *Coughlan* v. *Cambridge,* 166 Mass. 268.   *Rourke* v. *White Moss Colliery Co.* 2 C. P. D. 205.   *Murray* v. *Currie,* L. R. 6 C. P. 24.   *Byrne* v. *Kansas City Railroad,* 61 Fed. Rep. 605.   But we are of opinion that there is a distinction between these cases and the so called carriage or driving cases, and that the hiring of an automobile, with a licensed chauffeur in the general service of an owner, falls within the principle covering cases of the latter class.

*Exceptions overruled.*