JOHN JOSEPH CARR, Respondent, *v.* MICHAEL BURKE, Appellant.

Second Department, April 12, 1918.

**Master and servant — negligence — liability of one engaged in trucking business for negligence of driver of truck hired by another from him — doctrine of respondeat superior not applicable.**

Where a company engaged in the express business hired from the defendant a truck and team with driver for a day and used them in its own business, and they were under its sole control, the relation of master and servant did not exist during the day between the defendant and the driver, and the rule of *respondeat superior* has no application and the complaint in an action against the defendant for personal injuries resulting from the

alleged negligence of the defendant's driver while performing duties for the express company should be dismissed.

Under such circumstances the question presented is one of law for the court.

APPEAL by the defendant, Michael Burke, from a judgment of the County Court of Kings county, entered in the office of the clerk of said county on the 24th day of November, 1917, upon the verdict of a jury for $125, and also from an order entered in said clerk's office on the 3d day of December, 1917, denying defendant's motion for a new trial made upon the minutes.

The defendant is engaged in the trucking business, owning trucks and horses and employing men to operate them. One Bowman was his employee. The night before the accident the defendant was called to the telephone by the Merchants' Rapid Service Company, engaged in the express business, with whom he had never had any business relations theretofore, and asked if they could have a truck and team the following day. On the following morning, when defendant's driver, Bowman, reported for work, defendant sent him to the place of business of said company with one of his trucks and teams. He was given two packages, one for the Adams Express Company and the other for Montgomery Ward, which he delivered, and he was then directed by said company to go to the Bush Terminal for a load of filled water bottles and bring them to the office of said company. He was on his way to the office with the load of bottles when he collided with a cart driven by plaintiff, in consequence of which plaintiff was injured. Bowman was paid for his week's work, which included the day of the accident, by the defendant, who was paid eight dollars by said express company for the day's use of the truck and horses and the services of Bowman.

The plaintiff was in the employ of the street cleaning department of the city of New York, driving a two-wheeled dirt cart, on the day of the accident. The defendant gave no orders to Bowman after he left his place of business on the day of the accident, nor did he know what work he was engaged in doing other than that it was the work of the express company from whom Bowman took his orders that day and did what they directed him to do; his work consisted in

delivering goods to places designated by them and receiving at places to which he was sent by them, designated goods, and transporting the same to their office or place of business.

*Percival G. Barnard* [*Almond D. Fisk* with him on the brief], for the appellant.

*Robert P. Beyer* [*Israel M. Lerner* with him on the brief], for the respondent.

RICH, J.:

When the plaintiff rested his case, and again at the close of the evidence, the defendant moved to dismiss the complaint upon the ground, among others, that the plaintiff had failed to prove that the vehicle colliding with the cart driven by him was in control of the defendant at the time of the accident, and that the uncontradicted evidence established that such vehicle, together with the horses drawing it and its driver, was then under the control of the Merchants' Rapid Service Company. The motion was denied and the defendant excepted to such ruling, which it is now contended presents reversible error; that the complaint should have been dismissed as matter of law. The learned trial court submitted to the jury the question of whether Bowman was in the employ and control of the defendant or of the express company at the time of the accident, instructing them, " if you find that the driver Bowman was sent there with this wagon of Burke, and that this driver became, on that day, an employee and under the control of this Transit Company, if you find that, then you should find for the defendant, because this wagon, for the time being, had ceased to be under the control of the defendant. If you do not find that, if you find that the wagon at all these times was under the control of Burke, that he owned it, that he paid Bowman, that Bowman was his employee, that he simply took orders and did what was told him, he being all the time in the employ and under the control of the defendant, you could then apply all of these rules as to negligence that I have given you, and if you did so find that Burke was the owner, that Bowman was his employee, and that there was carelessness on Bowman's part that really brought this accident about, * * * and none

on the part of the plaintiff," that the plaintiff was entitled to a verdict. At the close of the charge the defendant took an exception to the court's submitting the question of the control of the truck to the jury, and at his request the court charged the jury " that if they find that the defendant did not have control over the driver at the time and place of the accident, and that, in fact, he was taking his orders and doing the work and business of another person or firm or express company, they should find a verdict in favor of the defendant." There was no controverted question of fact, the question presented being one of law for the determination of the court, and the judgment must be reversed. (*Hartell* v. *Simonson & Son Co.*, 218 N. Y. 345.) In addition, the verdict is against the law of the case as charged by the learned court, and against the uncontradicted evidence. The respondent relies on the rule declared in *Kellogg* v. *Church Charity Foundation* (203 N. Y. 191), but that case does not aid him. In the *Hartell Case* (*supra*, 349) the court points out very clearly the distinction between the two cases, as follows: " The principles of law which control in this class of cases are quite well settled. A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, who is liable for his negligence. But if the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence. In the case of *Kellogg* v. *Church Charity Foundation* (*supra*) the defendant was the owner of an ambulance, and it made an arrangement with a livery stable keeper to furnish a horse and driver to answer ambulance calls. The element of an independent contract is plainly apparent in that case. The liveryman undertook to do the work of running the ambulance for the defendant and the court had no difficulty in reaching the conclusion that the hospital was not liable for the negligence of the driver of the ambulance. On the other hand, in *Schmedes* v. *Deffaa* (*supra*) [153 App. Div. 819; revd., 214 N. Y. 675] a livery stable keeper who had an order from an undertaker to furnish carriages for a funeral, not having

a sufficient number of carriages of his own, applied to another liveryman for an additional carriage and driver. The second liveryman sent a carriage and driver as requested. That clearly was a case where the first liveryman procured additional facilities for doing his own work, and it was held in this court that he was liable for the driver's negligence." In the latest reported case considering the question here presented (*McNamara* v. *Leipzig,* 180 App. Div. 515), Mr. Justice SHEARN points out the same distinction. He says: " Of course the test is not the period of the hiring, whether for an hour, a day or three months. The test is whose work is being done and who, during the course of that work, has or exercises control over the doing of that work. Where the relation between the general employer and the party sought to be held is that of independent contractor the general employer is liable. It is his work that is being done by the employee when the general employer agrees to transport a passenger or the goods of another from one specified place to another. * * * A radically different situation arises when, instead of the general employer undertaking to perform specified services for another, he turns over and rents out both the instrumentality of service and· the services of the necessary employee to be used by another in the other's own business or for his own purposes and under such circumstances as naturally and necessarily deprive the general employer both of the right and the opportunity to control and direct the employee and vest that control and direction in another."

In the instant case the record presents a· single transaction; the express company was engaged in its own business, with its own instrumentalities and with its own employees. Requiring for the day an additional truck, it applied to the defendant, who sent a man to the company with a team and truck. He did not undertake or agree to deliver any of its goods. He simply rented his team with a driver for the day. He had no control for that day of the horses, truck or driver; they were under the sole control of the company. The driver took no orders from defendant as to what he should do or where he should go during the day. All orders and directions were given him by the company, who paid the defendant

eight dollars for the day's use of such truck, horses and driver. Defendant did not stand in the relation of an independent contractor with the company. It was not his work that was being done, but that of the company under its sole direction. The relation of master and servant did not exist during that day between the defendant and Bowman, and the rule of *respondeat superior* has no application. The respondent directs attention to the decisions in *Vasligato* v. *Yellow Pine Co.* (158 App. Div. 551, decided in 1913) and *Hanatsek* v. *Wilson* (161 id. 634, decided in 1914), which he contends are authorities sustaining his contention. In both of these cases the evidence established that the driver remained, and was at the time of the accident, the servant of the general employer, and for that reason it was held that the cases were governed by the rule declared in the *Kellogg* case, saying in *Hanatsek* v. *Wilson,* " the essential preliminary question in such a case is whether the contract between the general employer of the driver and the hirer of the vehicle placed the driver under the exclusive direction and control of the latter as to the general management of the team, and thus for the time being the driver was the servant of the hirer," which condition is established in the instant case by undisputed evidence and distinguishes the case at bar from the rule therein declared.

The judgment and order of the County Court of Kings county should be reversed, with costs, and the complaint dismissed, with costs.

Present — JENKS, P. J., THOMAS, MILLS, RICH and PUTNAM, JJ.

Judgment and order of the County Court of Kings county reversed, with costs, and complaint unanimously dismissed, with costs.